IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ARISTOTLE P., CHIUCHIU G., AUGUSTINE N., )
YAHARIA R., MICHAEL W., REGINALD R., and )
GWENDOLYN B., individually and on behalf of )  No. 88 C 7919
all other similarly situated individuals, by their next )
friend, PATRICK T. MURPHY, Public Guardian )
of Cook County, )
                Plaintiffs, )
v. )
                                 )
JESS McDONALD, Director, Illinois Department )  Judge Charles R. Norgle
of Children and Family Services, )
                Defendant. )

## PARTIES' JOINT REPORT TO THE COURT AND JOINT MOTION FOR ENTRY OF AN AGREED ORDER REGARDING THE CONSENT DECREE

The plaintiffs, a class of children in the custody or under the guardianship of the Illinois Department of Children and Family Services ("DCFS" or the "Department"), and the defendant, Jess McDonald, Director of the Illinois Department of Children and Family Services, hereinafter the parties, through their respective counsel, hereby respectfully submit their joint report to the Court and their joint motion for entry of an agreed order regarding the consent decree.

### INTRODUCTION AND PARTIES

1. This action was brought by Patrick T. Murphy, the Cook County Public Guardian, on behalf of a class of children in the custody or under the guardianship of the Department, alleging a Departmental practice and policy of placing them apart from their brothers and sisters and not affording reasonable visitation and other contact with their siblings.

2. On October 3, 1989, the Honorable Ann Claire Williams certified the following plaintiff class pursuant to Fed. R. Civ. P. 23(c):

> Children who are or will be subjects of neglect, dependency or abuse petitions filed in the State of Illinois; who are or will be placed in the custody or under the guardianship of [DCFS] by order of court; who have not been or will not be placed with their siblings in foster homes or residential facilities; and who have been or will be denied regular and reasonable visitation with their siblings.

3. The defendant is the Director of the Illinois Department of Children and Family Services ("DCFS"), sued in his official capacity. Pursuant to Fed. R. Civ. P. 25(d)(1), Jess McDonald, Director of DCFS, has been automatically substituted as the defendant for Gordon Johnson, who was the DCFS director when this suit was filed.[1]

## PROCEDURAL BACKGROUND

4. The plaintiffs filed their complaint on September 15, 1988, alleging that the defendant had a practice of placing siblings apart from their brothers and sisters and not affording them reasonable visitation.[2] Pursuant to 42 U.S.C. § 1983, the plaintiffs alleged that these practices and policies violated their rights to freedom of association under the First Amendment, substantive due process under the Fourteenth Amendment, and their rights under the Adoption Assistance and Child Welfare Act of 1980, 42 U.S.C. §§ 620-628, 770-779 ("AAA"). The plaintiffs also filed a motion for preliminary injunctive relief. On September 7, 1989, the court denied the defendant's motion to dismiss the First Amendment freedom of association claims and the

---

[1] The initial complaint also named DCFS's guardianship administrator as a defendant, who was subsequently dismissed by agreement of the parties upon entry of the consent decree on March 11, 1994. See Consent Decree ¶ 1(d).

[2] The court summarized some of the pertinent factual allegations of the Complaint in its opinion denying defendant's motion to dismiss, 721 F. Supp. at 104-08.

2

Fourteenth Amendment substantive due process claims, and granted defendant's motion with respect to the AAA claims.[3] Aristotle P. v. Johnson, 721 F. Supp. 1002 (N.D. Ill. 1989).

5. Subsequent settlement discussions resulted in a consent decree, Exhibit A hereto, which the court approved and entered on March 11, 1994. On February 5, 1997, the court granted the parties' joint motion for entry of an agreed order extending the terms of the consent decree from March 11, 1997 to March 11, 1999. On March 10, 1999, the court granted the parties' joint motion for entry of an agreed order extending the terms of the consent decree to March 11, 2002.

6. Subsequently, the Honorable Ann Claire Williams was appointed to the United States Court of Appeals, Seventh Circuit. Therefore, this matter was randomly assigned to this Honorable Court.

## CONSENT DECREE REQUIREMENTS AND DEFENDANT'S PROGRESS TO DATE

7. The requirements of the consent decree address DCFS's rules and regulations, training of case workers and foster parents in relation to placement of siblings together and sibling visitation in circumstances when siblings must be placed apart and notification requirements.[4] The major requirements of the consent decree are summarized below.

---

[3] Upon the defendant's motion, the court certified its September 7, 1989 order for an immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The Seventh Circuit denied the defendant's request for an interlocutory appeal.

[4] The decree also contains various provisions for this Court's continuing jurisdiction and enforcement. See, e.g., ¶¶ 28-30. Under ¶ 28 and the court's March 10, 1999 agreed order referenced above, this Court retains continuing jurisdiction over this case to enforce compliance with the decree until March 11, 2002, at which time the decree will expire unless extended. Under ¶ 29, prior to that time, the children may

3

## Sibling Placement

8. The parties agree that the best way to ensure sibling contact is to place children together from the beginning. Therefore, in November 2000, the Department established a protocol to address how it assigns new sibling cases in Cook County and to increase placement of sibling groups together when they enter the DCFS system.

9. The Department provided statistics concerning the percentage of new sibling groups or add-on siblings that were placed together from September 2000 to November 2001. In September 2000, just 23.8% of new sibling groups or add-on siblings were placed together. In November 2000, that number jumped to 62.4%. In September 2001, 56.9% of new sibling groups or add-on siblings were placed together. The parties agree to extend the decree as to sibling placement for one year to assure consistency in DCFS compliance with placing siblings together.

10. Concerning sibling placement in counties other than Cook, the Department is working on a placement mechanism that should be available this year.

## Sibling Visitation

11. The decree requires that, when siblings cannot be placed together for clinical or other defined reasons, they receive, at minimum, two visits per month, for a minimum of two hours per visit. The decree recognizes that, in certain circumstances, it may not be logistically possible to meet these visitation requirements, or it may not be in a child's best interest to have regular visitation with his or her brother(s) or sister(s) or for visits to

---

move to extend the duration of the decree and of this Court's continuing jurisdiction, upon a showing that "DCFS has not substantially complied with the terms of this Decree." Paragraph 30 contains further compliance provisions.

last two hours.[5] All visits must be documented in the child's case file. See ¶ 18. Each child's file must also contain a sibling visitation plan specifying, inter alia, the frequency, duration and location of visitation. See ¶ 14(c)-(e).

12. During the past three years, the Department's Division of Quality Assurance staff undertook two empirical studies of the Department's compliance with the above sibling visitation requirements. These studies identified areas where the Department must make further efforts to implement the consent decree.

13. The statewide review completed in April 2001 found that in cases where children were separated from their siblings and no Aristotle P. exception existed: (1) in only 31% of the cases had the children visited their siblings as required, (2) in only 33% of the cases had the children visited their siblings at least once in the previous six months, and (3) in 36% of the cases, the children had no documented visits in the past six months. The parties agree that one-third is not substantial compliance and the parties will continue to work together to ensure that the Department reaches substantial compliance with the decree.

14. The most commonly identified barriers to sibling visitation were transportation issues and multiple case workers. The study made several recommendations on how to improve sibling visitation. Those recommendations included: (1) greater coordination and cooperation between multiple case workers and agencies, (2) training for case management staff as to the importance of maintaining familial ties and the availability of transportation subsidies for foster parents who help to

---

[5] By way of example, DCFS may afford less visitation (or none at all) if so ordered by a court, or if one sibling poses a specific and documented risk to another sibling, or if siblings are placed more than 150 miles apart. See generally ¶¶ 13-14, 16.

5

provide sibling visitation, (3) requiring documentation of sibling visitation at administrative case reviews, and (4) supervisory review of compliance with sibling visitation.

15. The results of this study have provided the Department with information and recommendations useful to the development of strategies to improve the frequency of sibling visitation.

**Transportation Subsidies**

16. One of the obstacles to visitation identified in the studies is transportation. In an effort to alleviate this barrier, the Department agreed to provide a transportation subsidy of up to $150 per month to foster parents who transport children and supervise sibling visitation and an additional $100 to foster parents who host an overnight sibling visitation.

17. The plaintiffs need to determine how many foster parents are (1) aware that transportation subsidies are available and (2) are taking advantage of the transportation subsidies.

**Performance Contracting**

18. The Department agreed to implement monetary sanctions against private agencies that the Department finds to be below a certain level of compliance with the sibling visitation requirement of the decree. For example, for fiscal year 2002, the threshold for compliance is six visits during a six-month period, or 50% compliance. The Department has agreed to increase the threshold for compliance in future years.

19. As the monetary incentive components of the performance contracting strategies do not begin until February 2002, the parties will require additional time to evaluate the effectiveness of these strategies.

**DCFS Quality Assurance**

20. To further improve compliance with the decree, the Department hired four additional Quality Assurance staff members.

**Foster Parent Training**

21. The Department continues to train foster parents on the importance of sibling relationships, the requirements of the Aristotle P. consent decree, and the various subsidies and fees implemented to facilitate sibling visitation. The Department continues to make efforts to improve this training.

**One Family, One Worker**

22. In another effort to improve compliance, the Department consolidated case management on many Cook County cases. The Department found that visitation increased by assigning one case worker to one family. As of January 2001, 1300 cases were split among more than one worker in Cook County. By July 2001, the number of cases with more than one worker had been reduced by more than half to 661.

**Notification Requirements to Children
and Foster Parents**

23. The decree requires DCFS to provide all children (seven years of age and older) with siblings placed apart, as well as the children's foster parents, with the names, birth dates, placements, addresses and telephone numbers of all such siblings placed apart ("sibling contact information"). If a sibling placed apart is moved, DCFS is required to give written notice of the name, address and telephone number of the child's

new placement to each sibling and each sibling's foster parent within seven days of the move ("sibling relocation information"). Copies of these notifications are to be documented and contained in the child's case file. See ¶¶ 11, 12.

24. A 1999 amendment to the Child Care Act, 20 ILCS 505/35.3, protects foster parents from disclosure of their addresses and telephone numbers. The parties agreed that when a case worker places a child in a foster home, the worker will assess whether there are any clinical or safety reasons why siblings should not have that child's address and telephone number as required under the decree. If no such reasons exist, the foster parent will be notified that the Department intends to convey this information to the siblings, and the foster parent can seek a protective order if he or she so chooses. If such a reason does exist, it will be documented as part of the assessment, and DCFS will notify the child's attorney and guardian ad litem in writing of the decision not to advise the child's siblings of the child's address and telephone number, along with said documentation.

25. A 1999 statewide survey made a variety of recommendations to increase the Department's compliance with the notification issue, including the utilization of agency performance teams to assist in monitoring the notification requirement.

### Notification Requirements to Child's Attorney and Guardian ad Litem

26. Paragraph 26 of the decree requires that, whenever the Department decides to separate siblings who had been placed together, it must notify each child (seven years or older), and the child's attorney and guardian ad litem, in writing, not less than ten days prior to the implementation of its decision, unless continued joint placement

poses an imminent risk of harm to one or more of the children. In such a case, the attorney and guardian <u>ad</u> <u>litem</u> must be notified within ten days of the separation.

27. The parties have not yet undertaken an empirical study of the Department's compliance with the above notification requirements.

## **CONCLUSION**

28. The parties agree that, although the Department has made and continues to make progress in its implementation of the consent decree, for the reasons stated in the foregoing joint report, the parties agree to a one-year extension of the consent decree regarding sibling placement, until March 11, 2003, and a two-year extension of the consent decree regarding sibling visitation, until March 11, 2004.

Date: February 26, 2002

Respectfully Submitted,

_____
One of the Attorneys for
the Class Plaintiffs

_____
One of the Attorneys for the Defendant
Jess McDonald, DCFS Director

Patrick T. Murphy
Peter J. Schmiedel
Jill Runk
Office of the Cook County Public Guardian
69 West Washington Street
Suite 1800
Chicago, Illinois 60602
(312) 603-0800

Barbara L. Greenspan
Office of the Attorney General
Child Welfare Litigation Bureau
100 West Randolph Street
Suite 4-600
Chicago, Illinois 60601
(312) 814-6747

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ARISTOTLE P., CHIUCHIU G., AUGUSTINE N., )
YAHARIA R., MICHAEL W., REGINALD R., and )
GWENDOLYN B., individually and on behalf of ) No. 88 C 7919
all other similarly situated individuals, by their next )
friend, PATRICK T. MURPHY, Public Guardian )
of Cook County, )
                      Plaintiffs, )
  v. )
 )
JESS McDONALD, Director, Illinois Department ) Judge Charles R. Norgle
of Children and Family Services, )
 )
                      Defendant. )

## AGREED ORDER

This is a class action lawsuit in which a consent order was entered on March 11, 1994. Currently before the Court is a joint motion for entry of an agreed order filed by the plaintiffs and the defendant Jess McDonald, Director of the Department of Children & Family Services ("the Department" or "DCFS").[1]

This Court having read the motion and being duly advised of the purpose and nature of the request, hereby enters the following order:

Paragraph 28 of the Consent Decree, which currently reads as follows:

> This Court retains continuing jurisdiction over this case to enforce compliance with the Consent Decree until March 11, 2002, at which time the Consent Decree will expire unless extended pursuant to Paragraph 29,

will now read as follows:

---

[1] Jess McDonald is the current Director of DCFS, and pursuant to Fed. R. Civ. P. 25(d)(1) is automatically substituted for Sterling M. Ryder in this official capacity lawsuit.

This Court retains continuing jurisdiction over this case to enforce compliance with the Consent Decree regarding sibling placement issues until March 11, 2003, at which time the Consent Decree will expire unless extended pursuant to Paragraph 29. In addition, this Court retains continuing jurisdiction over this case to enforce compliance with all Consent Decree provisions regarding sibling visitation until March 11, 2004, at which time the Consent Decree will expire unless extended pursuant to Paragraph 29.

ENTER:

_____
Charles R. Norgle

DATED: _____

AGREED:

_____   _____
One of the Attorneys for           One of the Attorneys for the Defendant
the Class Plaintiffs               Jess McDonald, DCFS Director

Patrick T. Murphy                  Barbara L. Greenspan
Peter J. Schmiedel                 Office of the Attorney General
Jill Runk                          Child Welfare Litigation Bureau
Office of the Cook County Public Guardian   100 West Randolph Street
69 West Washington Street          Suite 4-600
Suite 1800                         Chicago, Illinois 60601
Chicago, Illinois 60602            (312) 814-6747
(312) 603-0800

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ARISTOTLE P., CHIUCHIU G., AUGUSTINE N., YAHARIA R., MICHAEL W., REGINALD R., and GWENDOLYN B., individually and on behalf of all other similarly situated individuals, by their next friend, PATRICK T. MURPHY, Public Guardian of Cook County, | ) ) ) ) ) ) ) | No. 88 C 7919 |
| Plaintiffs, | ) | |
| v. | ) ) | |
| JESS McDONALD, Director, Illinois Department of Children and Family Services, | ) ) ) | Judge Charles R. Norgle |
| Defendant. | ) ) | |

## NOTICE OF PRESENTMENT

To: Barbara L. Greenspan
Office of the Attorney General
100 West Randolph Street
Suite 4-600
Chicago, Illinois 60601

**PLEASE TAKE NOTICE** that on March 1, 2002, at 9:30 a.m., I shall appear before the Honorable Charles R. Norgle, or any judge sitting in his stead, in Courtroom 2341 of the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn, Chicago, Illinois, and present the attached Joint Report to the Court and Joint Motion for Entry of an Agreed Order Regarding the Consent Decree.

/s/ Jill Runk

## CERTIFICATE OF SERVICE

I, Jill Runk, an attorney, certify that I caused a copy of this Notice and Joint Report to be hand-delivered to each person to whom the notice is directed, on February 26, 2002, prior to 5:00 p.m.

/s/ Jill Runk

PATRICK T. MURPHY
PETER J. SCHMIEDEL
JILL RUNK
OFFICE OF THE COOK COUNTY PUBLIC GUARDIAN - 70500
69 West Washington Street, Suite 1800
Chicago, Illinois 60602
(312) 603-0800